UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REBECCA JEAN BYRNE,

Plaintiff,

-v- 1:25-CV-589 (DNH/DJS)

COHOES HOUSING
AUTHORITY *et al.*,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID N. HURD
United States District Judge

**DECISION & ORDER**

## I. INTRODUCTION

On May 12, 2025, *pro se* plaintiff Rebecca Jean Byrne ("plaintiff"), a former participant in the federal Housing Choice Voucher program administered by the Cohoes Housing Authority ("CHA"), initially filed this 42 U.S.C. § 1983 action alleging that defendants U.S. Department of Housing and Urban Development ("HUD"), the CHA, and various HUD and CHA officials violated her constitutional rights by, *inter alia*, engaging in "unauthorized surveillance, coerced child interrogation, falsified residency claims, blacklisting, and denial of procedural rights." Dkt. No. 1.

After plaintiff paid the filing fee, *see* Dkt. No. 16, she filed an amended complaint, Dkt. No. 17. Plaintiff's amended complaint names as defendants HUD, HUD employee Marlene Conorozzo ("Conorozzo"), the CHA, CHA employees Katherine Hatch-Oliver ("Hatch-Oliver"), JoMarie Shufelt ("Shufelt"), Tracy Crandall ("Crandall"), Matt Ethier ("Ethier"), as well as the Cohoes City School District ("Cohoes CSD") and two of its employees, Alena Savaria ("Savaria") and Carol Blide ("Blide"). *Id.* Thereafter, plaintiff withdrew her jury demand. Dkt. No. 21.

What followed is the chaos attendant to early-stage fee-paid *pro se* litigation: plaintiff filed with the Court evidence of her efforts to serve the various defendants she had named, *see, e.g.*, Dkt. Nos. 22, 23, 24, which were often only partly successful, *see, e.g.*, Dkt. Nos. 25, 28. Plaintiff, in her apparent haste to litigate this matter aggressively, also filed responses to most developments on the docket, including, for example, a pre-emptive statement about a party's anticipated request for an extension of time. *Compare, e.g.*, Dkt. No. 27 (filed 8/5/26), *with* Dkt. No. 29 (filed 8/6/26).

Then the chaos on the docket ramped up. On August 12, 2025, with several issues related to service still unfolding, plaintiff went ahead and filed a *second* amended complaint, Dkt. No. 34, along with letter motions regarding her purported inability to effectuate good service on certain defendants, Dkt. Nos. 26, 33.

U.S. Magistrate Judge Daniel J. Stewart, in a laudable effort to impose some semblance of order and with the goal of preventing this docket from spinning out of control, struck plaintiff's second amended complaint as unpermitted and procedurally improper (as plaintiff had already burned through her one-time-free amendment under Rule 15(a)(1)), granted in part plaintiff's service-related motions, and extended the deadline for all named defendants to respond to the amended complaint.[1] Dkt. No. 53.

Plaintiff continued to work toward serving the defendants, routinely showing her work using the Court's docket. For instance, she filed a "master certificate of service" as to certain federal and state agencies. Dkt. No. 55. She also sought leave to file a supplemental complaint, Dkt. Nos. 57, 60, which Judge Stewart denied, Dkt. No. 64.

Thereafter, plaintiff began "supplementing" her pleading anyway, Dkt. Nos. 68, 69, 72, filed a notice that sought to "clarify" her understanding of

---

[1] Judge Stewart also granted plaintiff's request to participate electronically using the Court's ECF system. Dkt. No. 58. But plaintiff has primarily been using a different document-filing system called "MFT" instead. *See, e.g.*, Dkt. No. 69. The MFT Portal is a Clerk's Office initiative that was spearheaded in response to perceived barriers that might limit litigants' access to the courts. The MFT portal has expanded to other novel uses (including for proposed sealed filings by attorneys), but the portal primarily operates as a method for *pro se* litigants to "electronically transmit documents to start a new case or to be filed in an existing case." https://www.nynd.uscourts.gov/submitting-files-court-mft. To be sure, the MFT portal seems to have made electronic filing—certainly anything that can be converted to a .pdf— a frictionless exercise for *pro se* litigants. But the speed and volume of MFT filings make it much more challenging to police ongoing litigation by applying the procedural requirements of our local and federal rules. And that problem is compounded when the filer is a *pro se* litigant, because the Court is obligated to try to accommodate them. Whatever other merits MFT might have, the Court is not convinced that it leads to better legal outcomes for the litigants involved in the actual legal disputes over which the district court presides.

Judge Stewart's orders, Dkt. No. 71, and moved for reconsideration of Judge Stewart's order denying her "equitable tolling and heightened scrutiny," Dkt. No. 75.

In the meantime, proofs of service continued to roll in. Dkt. Nos. 76, 77, 78, 79, 80. Plaintiff also decided to offer Judge Stewart some more filings in support of her motion for reconsideration. Dkt. Nos. 81, 83. When some of the appearing defendants moved to strike one of those filings, Dkt. Nos. 82, 84, plaintiff responded with more filings in opposition, Dkt. No. 86, 87, 89.

Undeterred, plaintiff filed a further motion for leave to file a "corrected second amended complaint." Dkt. Nos. 91, 92, which she soon said needed to be amended, too, Dkt. No. 95. Along with these filings, plaintiff also filed a notice to the Court "respectfully" reminding it about its ongoing responsibility to liberally construe *pro se* filings, Dkt. No. 96, a notice that "invokes the long-standing rule that substance prevails over form in civil-rights litigation," Dkt. No. 97, another notice about the overarching concept of fairness and equity, Dkt. No. 98, and then a letter that "clarif[ied]" that Dkt. No. 98 was actually intended to replace the previous entries on these topics. Dkt. No. 99.

More parties appeared. Dkt. No. 100. Some of them asked for time to process what was happening and how best to respond. Dkt. No. 104. Judge Stewart did his best to triage matters by fixing deadlines. Dkt. Nos. 105, 106, 107, 108. Plaintiff, in response to a single motion to dismiss (at Dkt. No. 49)

filed by the CHA defendants who'd appeared early in this action, filed five individual "notices" about this long-pending motion, Dkt. Nos. 110, 111, 112, 113, 114, 115, along with other "notices" providing supplemental information to the Court about her claims, Dkt. Nos. 109, 116, 117.

On December 17, 2025, Judge Stewart gently explained to plaintiff that these "supplemental" filings are improper. Dkt. No. 118. Judge Stewart also explained that, before plaintiff's then-pending motions could be adjudicated, the Court needed to hear from defendants, whose responses were due in a few weeks. *Id.*

Thereafter, each group of defendants named in plaintiff's amended complaint moved to dismiss: the CHA (Dkt. Nos. 49, 120), the CHA employees (Dkt. No. 123), HUD and its employee (Dkt. Nos. 128, 129), and the Cohoes CSD and its employees Blide and Savaria, who were named as defendants in the amended complaint's caption but not mentioned elsewhere in the operative pleading (Dkt. No. 125).

Plaintiff duly opposed the motions by the CHA employees (Dkt. No. 136), HUD (Dkt. No. 138), and the school defendants (Dkt. No. 139). Replies were filed. Dkt. Nos. 144, 149, 151, 155. Plaintiff then went on to file more unpermitted and procedurally improper "supplemental" notices about what she believed were important matters, including "structural due process defects" that were "newly discovered" Dkt. No. 146, an affidavit in support of her

supplemental notice, Dkt. No. 147, and another notice claiming that the CHA "never lawfully acquired authority" to take certain action against her, Dkt. No. 150.

On February 17, 2026, Judge Stewart issued an order denying plaintiff's pending motion for reconsideration and her pending motions to amend and denied certain defendants' motions seeking to strike some of plaintiff's inappropriate filings. Dkt. No. 158. Things were quiet on the docket for almost three weeks. But then plaintiff filed another "notice" seeking to inform the Court that she had located additional municipal records and she believed they were important to this case. Dkt. No. 159.

On April 12, 2026, plaintiff also moved for leave to file a second amended complaint. Dkt. No. 160. The same day, she also filed a "notice" about certain corrections that apparently needed to be made to her documents—the documents that she had literally just filed. Dkt. No. 161. In response, defendant CHA asked the Court what it should do about the latest motion to amend, since there were already a round of more-than-fully-briefed motions to dismiss *sub judice*. Dkt. No. 162.

The Court concluded that the best course of action—especially in light of the fact that trial courts generally bend over backwards to try to accommodate non-lawyer litigants—was to consider plaintiff's motion to amend in light of the motions to dismiss after giving defendants a chance to be heard about

what, if anything, the proposed second amended pleading might have changed about the case:

> TEXT ORDER: Upon review of the [162] joint letter brief on behalf of defendants, in light of the special solicitude owed to unrepresented litigants, and consistent with this Court's general preference to consider a plaintiff's motion for leave to amend in conjunction with any pending motions to dismiss, *see, e.g.*, *Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 386 (N.D.N.Y. 2023), defendants shall respond to plaintiff's [160] motion for leave to file her [161] corrected proposed second amended complaint on or before May 4, 2026. Any responsive submission should address whether permitting further amendment would be futile under the circumstances. The Court notes that the pending motions to dismiss [120, 123, 135, 128, 153] are otherwise fully submitted. NO FURTHER FILINGS are warranted from plaintiff until further direction of the Court. Plaintiff is cautioned that unpermitted filings will be stricken.

Dkt. No. 163 (cleaned up).[2] Thereafter, defendants replied. Dkt. Nos. 172, 173, 174, 175.

On July 9, 2026, less than two months after briefing *finally* closed on the motions to dismiss and the cross-motion to amend, plaintiff moved for further leave to file a "narrow supplemental memorandum limited to accrual and statute-of-limitations issues." Dkt. No. 180. Defendants opposed. Dkt. Nos. 181, 183, 184, 186. After that, plaintiff filed an "emergency motion for leave to file a reversed chronological supplemental pleading." Dkt. No. 187. That last motion, at least, has been denied. Dkt. No. 189. Most recently, though, plaintiff

[2] Some of the text order's references to the docket entries where the motions to dismiss are pending are incorrect.

has filed another "notice," this time of "total electronic blackout and account takeover," which has been effected by "adverse parties." Dkt. No. 190.

Defendants' motions to dismiss (Dkt. Nos. 49, 120, 123, 125, 128, 129) and plaintiff's cross-motion to amend (Dkt. Nos. 160, 161) are fully briefed and will be considered on the basis of the submissions without oral argument.[3]

## II. BACKGROUND

For reasons explained in more detail below, the following facts are taken from plaintiff's proposed second amended complaint, which clocks in at sixty-eight pages, Dkt. No. 161-3, and will be assumed true for the purpose of assessing defendants' motions to dismiss. The Court will also review plaintiff's amended complaint for its sufficiency. Dkt. No. 17.

Plaintiff alleges that the CHA, the Cohoes CSD, and HUD are operating as a RICO enterprise "to suppress exculpatory evidence and deny procedural protections," which "directly resulted in the deprivation of Plaintiff's protected property interests, the denial of due process, and unlawful retaliation." Dkt. No. 161-3 at 4 ¶¶ 3, 6.[4]

---

[3] The Court will also address the pending motions at Dkt. Nos. 153 and 180.

[4] Plaintiff's proposed second amended complaint is not sequentially numbered from start to finish but repeats the numbering in each section or subsection that begins a new page. The Court has cited to the corresponding page number (as generated by ECF) and line where possible. Because many of plaintiff's core allegations are repeated throughout the document, the Court has not restated them in full. They are incorporated by reference here.

As plaintiff explains, she possessed a protected property interest in the continued receipt of "Housing Choice Voucher Assistance," which she received from the CHA. Dkt. No. 161-3 at 6 ¶¶ 1–2. Plaintiff's supporting filings indicate that her voucher assistance fell within the CHA's jurisdiction beginning in 2018, when she moved to Cohoes, New York. *See* Dkt. No. 92.

According to plaintiff, defendants terminated her housing voucher assistance on April 29, 2019, and "finalized" this "termination letter" on May 3, 2019. Dkt. No. 161-3 at 6 ¶ 4. The CHA defendants indicate that this termination may have happened a month later, on June 10, 2019.[5] Dkt. No. 172; Dkt. No. 121-15.

Plaintiff explains that the termination process began on March 12, 2019, when CHA employees Oliver and Crandall initiated an investigation into plaintiff's "household composition." Dkt. No. 161-3 at 8 ¶ 1. The investigation, conducted by a non-party named Christopher Briggs, was not completed until May 3, 2019, even though the determination was dated April 29, 2019. *See, e.g.*, *id.* ¶ 3; *id.* at 14 ¶¶ 1–10. Plaintiff alleges that she went to the CHA on May 3, 2019, to obtain her case file but was refused access to those materials and removed by non-party police officers, who failed to generate a police report. *Id.* at 17–18 ¶¶ 1–9.

---

[5] The CHA defendants' supplemental memorandum also includes a detailed chronology of the events that led up to its decision to terminate plaintiff's rental assistance. Dkt. No. 172. Plaintiff's pleadings do not discuss these events in much detail (although some of her supplemental filings do).

In plaintiff's view, this timeline shows that defendants fabricated or falsified evidence and manipulated the procedure to obtain a predetermined result. Dkt. No. 161-3 at 8 ¶¶ 4–8, *id*. at 12 ¶¶ 1–10; *id*. at 19–20 ¶¶ 1–10; *id*. at 21–22 ¶¶ 1–13. For instance, plaintiff alleges that non-party Briggs obtained a statement from non-party Shirley Grant after representing to Grant that plaintiff was a "fugitive" and that "allowing her to reside at the property could cause loss of the residence." *Id*. at 14 ¶¶ 1–10. Likewise, plaintiff alleges that certain "recurring and identical" timestamps on documents show a "statistical and forensic anomaly." *Id*. at 21 ¶¶ 1–4.

On July 16, 2019, plaintiff submitted a complaint to HUD about the CHA employees' misconduct. Dkt. No. 161-3 at 35 ¶ 1. Plaintiff alleges that HUD employee Conorozzo altered the complaint and otherwise mishandled the investigation by relying on CHA's representations. *Id*. ¶¶ 2–9.

Thereafter, plaintiff alleges that defendants "executed a coordinated scheme to intercept, alter, and replace [plaintiff's] communications using administrative software." Dkt. No. 161-3 at 11. Later, the Cohoes CSD and its employees, Savaria and Blide, "participated in actions involving Plaintiff's child" that "interfered" with "educational stability and privacy interests." *Id*. at 53 ¶¶ 1–6. In addition, plaintiff's non-party sister, Melissa Byrna, was arrest in September 2025. *Id*. at 30 ¶¶ 4–8.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.*

Rule 12(b)(1) motions can be "facial" or "fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). A "facial" Rule 12(b)(1) motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id.* at 56. Under those circumstances, the plaintiff bears no evidentiary burden. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). Instead, the court must determine whether the complaint and its exhibits plausibly allege facts giving rise to subject-matter jurisdiction. *Carter*, 822 F.3d at 56.

In contrast, a "fact-based" Rule 12(b)(1) motion permits a defendant to proffer evidence outside of the pleading. *See Carter*, 822 F.3d at 57. In that scenario, the plaintiff will ordinarily need to come forward with evidence of their own to controvert the defendant's showing. *Id.* If the defendant identifies

"material and controverted" extrinsic evidence, the court "will need to make findings of fact in aid of its decision." *Id.* However, "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject-matter jurisdiction]," the plaintiff may rely on their pleading. *Id.*

**B. Rule 12(b)(6)**

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and

matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

As an initial matter, plaintiff is *pro se*. That means she is not represented by a lawyer. Thus, as plaintiff correctly pointed out in one of her many "notices," Dkt. No. 97, her filings must be held to less stringent standards than pleadings drafted by an attorney. *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has repeatedly explained, pro se filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims that they suggest. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). "This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

This leads to a second, related procedural matter: how should plaintiff's numerous additional submissions be handled? In addition the complaint, Dkt. No. 1, the amended complaint, Dkt. No. 17, her withdrawal of the jury demand with respect to that pleading, Dkt. No. 21, and the corrected version of her proposed second amended complaint, Dkt. No. 161-3, plaintiff has filed dozens of additional submissions. *See, e.g.*, Dkt. No. 36, 37, 72, 83, 96, 97, 98, 99, 109, 110, 111, 112, 113, 114, 115, 116, 117, 146, 147, 180. Judge Stewart warned

plaintiff that most of these filings were procedurally improper, Dkt. No. 118, but this warning did not alter plaintiff's behavior in a meaningful sense.

Technically, these kind of procedurally inappropriate submissions may be brushed aside, even when it is a *pro se* litigant who is flouting the procedural rules. *See, e.g.*, *Edward v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995) (cautioning that *pro se* status does not exempt litigant from procedural rules).

Even so, the Court has done its best to look through these filings—although it will not be discussing them all individually in its legal analysis—in an effort to clarify the nature and sufficiency of plaintiff's claims for relief. *Cf.* *Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1998) ("[C]ourts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party.").

The final procedural matter to be addressed is how to handle plaintiff's motion for leave to further amend, Dkt. No. 160, which she filed after each group of defendants had already moved to dismiss the operative pleading in this action, *i.e.*, plaintiff's amended complaint, Dkt. Nos. 49, 120, 123, 125, 128, 129.

Where, as here, the time in which to amend the pleading as of right has expired, Rule 15 of the Federal Rules of Civil Procedure states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). Rule 15 goes on to state that "[t]he

court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but "it is well established that leave to amend a complaint need not be granted where amendment would be futile," *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

As relevant here, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss." *Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 386 (N.D.N.Y. 2023) (cleaned up). Therefore, when a party cross-moves for leave to amend in response to the filing of a motion to dismiss, "district courts often streamline their analysis with a time-saving strategy: they simply evaluate the pending motion to dismiss in light of the facts alleged in the proposed amended pleading." *Id.* (cleaned up). If the facts alleged in the proposed pleading would not survive a motion to dismiss, then a cross-motion to amend can be denied as "futile." *See, e.g.*, *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020).

Thus, as the Court explained in its Text Order, "in light of the special solicitude owed to unrepresented litigants, and consistent with this Court's general preference to consider a plaintiff's motion for leave to amend in conjunction with any pending motions to dismiss," Dkt. No. 163 (cleaned up), the Court is going to consider the sufficiency of the factual allegations in the corrected version of plaintiff's proposed second amended complaint against the arguments made in defendants' motions to dismiss. And because the

sufficiency of the amended complaint overlaps so heavily with the issues raised by the proposed second amended complaint, the Court will also consider whether the amended complaint should survive this round of motion practice.

**A. 42 U.S.C. § 1983**

Plaintiff's amended complaint and corrected proposed second amended complaint asserts claims under 42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). However, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights secured elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's amended complaint asserts 42 U.S.C. § 1983 claims for alleged violations of due process (Count I), abuse of process (Count 3), malicious prosecution (also Count 3). Plaintiff's corrected proposed second amended complaint also asserts 42 U.S.C. § 1983 claims for alleged violations of the statute itself (Count XIV), procedural due process (Counts I, X), fabrication of evidence

(Counts III, V, XVII), substantive due process (Counts IV, VI, XVIII), retaliation (Count VII), municipal liability (Count VIII), denial of access to courts (Count IX), malicious prosecution (Count XIX), and unreasonable seizure (Count XXII).[6]

Plaintiff has named the individual defendants in their "individual" and "official" capacities. Dkt. No. 161-3 at 1. A public official can be sued in an "official capacity" and/or a "personal capacity" (also called an "individual capacity"). *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

An individual-capacity § 1983 damages claim triggers the requirement of a defendant's "personal involvement" in the alleged constitutional wrong, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (collecting cases), and implicates the doctrine of "qualified immunity," an affirmative defense that has been judicially crafted to shield public officials who make reasonable-but-mistaken judgment calls in gray areas where the law is unsettled, *see, e.g.*, *Tripathy v. McKoy*, 103 F.4th 106, 116 (2d Cir. 2024).

An official-capacity § 1983 claim against an individual official "is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404

---

[6] Plaintiff's corrected second amended complaint appears to restate certain counts or overlap them with others. *See* Dkt. No. 161-3 at 44 (restating municipal liability claim as "Count VII"). The Court has summarized the claims here and omitted overlapping duplicates. Plaintiff also alleges claims for "spoliation of evidence" in Count XXI and "declaratory and injunctive relief" in Count XX. Plaintiff has taken a similar approach in her amended complaint, asserting free-standing claims for "supervisory liability" (Count 5), a "pattern or practice of civil rights violations" (Count 6), and declaratory and injunctive relief (Count 7). These are not discrete claims—they are derivative of a plausibly underlying claim for relief—and will therefore not be discussed separately except to the extent necessary.

F.3d 683, 687 (2d Cir. 2005). Qualified immunity is not available to municipalities, *Owen v. City of Independence*, 445 U.S. 622 (1980), so a § 1983 plaintiff can recover damages against a municipality directly as long as she can satisfy the "policy or custom" requirements set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

Where, as here, a plaintiff has already named the municipality as a defendant, courts dismiss the official-capacity claims as "redundant" or "duplicative." This is because the Supreme Court's decision in *Monell*—permitting direct § 1983 suits against a municipal entity—eliminated the need to resort to the "official-capacity" legal fiction.[7] *Kentucky*, 473 U.S. at 167 n. 14 ("There is no longer a need to bring official-capacity actions against local government officials . . . [because] under Monell, . . . local government units can be sued directly for damages and injunctive or declaratory relief.").

Importantly, though, *Monell* is a derivative form of liability. *See, e.g.*, *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (collecting cases). *Monell* requires a plaintiff to establish that some actor committed an underlying constitutional wrong. This does not necessarily mean that a § 1983 plaintiff must

[7] The exception is that official-capacity § 1983 claims against an individual defendant are sometimes used as a vehicle to enjoin an ongoing violation of federal law (under something called the doctrine of *Ex parte Young*) when the action would otherwise be barred by an absolute immunity doctrine, such as the sovereign immunity enjoyed by a State or one of its agencies under the Eleventh Amendment. *See, e.g.*, *Walker v. N.Y. State Dep't of Health*, 788 F. Supp. 3d 427, 490–91 (E.D.N.Y. 2025) (summarizing relevant law). This exception is inapplicable here because the CHA, the Cohoes CSD, and the employees are non-immune defendants.

name as defendants the individual officials who were acting on behalf of the municipality at the time of the alleged wrong (although most plaintiffs do, since they usually want to pursue § 1983 money damages claims against those individuals). *See, e.g.*, *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).

However, because a municipality can only act through its agents or officials, this *does* mean that a § 1983 plaintiff must plausibly allege the existence of some underlying constitutional violation first, *see Askins*, 727 F.3d at 253, and then find a way to tie that violation to the municipality itself through one of the methods recognized in *Monell* and its progeny. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (cleaned up) ("Under § 1983, local governments are responsible only for their own illegal acts.").

As noted *supra*, plaintiff has brought a laundry list of different 42 U.S.C. § 1983 claims based on defendants' involvement in the termination of her participation in the Housing Choice Voucher program, which was finalized on May 3, 2019. The problem for plaintiff is that all of these claims are time-barred by the applicable statute of limitations.

"Generally speaking, a statute of limitations establishes the time period within which lawsuits may be commenced after a cause of action has accrued." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998). A cause of action accrues "when the plaintiff knows or has reason to know of the harm." *Sikorsky v. City of Newburgh*, 136 F.4th 56, 62 (2d Cir. 2025) (cleaned up); *see also Morse*

*v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (explaining "[f]ederal law governs the question of when a federal claim accrues").

Ordinarily, "the lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (cleaned up). "The pleading requirements in the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). "However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).

It is clear from the face of the proposed second amended complaint that plaintiff's civil rights claims accrued, at the latest, on June 12, 2019, the date on which the voucher termination appears to have been final. In New York, plaintiff had three years from that date on which to file a lawsuit about these harms. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). But plaintiff did

not file this lawsuit until May 12, 2025, over six years later. Accordingly, plaintiff's § 1983 claims must be dismissed because they are time-barred.[8]

**B. 42 U.S.C. § 1985** (Count XV)

Plaintiff's corrected proposed second amended complaint asserts claims under 42 U.S.C. § 1985(2) and (3) for a conspiracy to obstruct justice.

42 U.S.C. § 1985, originally enacted as part of the Civil Rights Act of 1871, outlaws "five broad classes of conspiratorial activity." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). "In general terms, "In general terms, [§ 1985] proscribe[s] conspiracies that interfere with (a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'; and (e) the right to support candidates in federal elections." *Id.*

This claim is also barred by the three-year statute of limitations, *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001), and is not saved by the application of any equitable principles. To the extent this claim might be understood as alleging that defendants are engaged in some kind of

---

[8] They are a number of exceptions to this general rule. Some of them are generally applicable (the primary one being equitable principles like tolling). Others are claim-specific (such as the accrual rule that applies to a malicious prosecution claim). The Court has reviewed plaintiff's pleadings and all of her many filings. Based on that review, neither tolling nor any other principle saves any of these claims. *See, e.g.*, *Clark v. Hanley*, 89 F.4th 78, 92 (2d Cir. 2023). The same is true of the Executive Orders issued during the COVID-19 pandemic, which would have added a total of 228 days to the otherwise-applicable limitations period. *See, e.g.*, *Johnson v. N.Y. State Police*, 659 F. Supp. 2d 237, 263 (N.D.N.Y. 2023).

ongoing conspiracy, the few factual allegations offered in the proposed second amended complaint are far too generalized and conclusory to permit a plausible inference of liability against any named defendant on this claim. *See, e.g.*, *Ruggiero v. City of Cortland, N.Y.*, 2018 WL 5983505, at *8 & n.6 (N.D.N.Y. Nov. 14, 2018) (explaining that these provisions require class-based animus or evidence that the harm involved plaintiff's participation as a party or a witness in a federal court matter). Accordingly, plaintiff's § 1985 claims must be dismissed.

**B. Bivens or Federal Officer Liability** (Count XI)

Plaintiff's amended complaint asserts a so-called *Bivens* claim (Count 4). Plaintiff's corrected proposed second amended complaint also asserts *Bivens* claims against HUD, a federal agency, and Conorozzo, a HUD employee.[9]

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.").

---

[9] Plaintiff's amended complaint and corrected proposed second amended complaint reference 42 U.S.C. § 3617, but any claim under that statute is also time-barred for the reasons explained in HUD's motion to dismiss. *See* Dkt. No. 128-1 at 19–21.

This body of law bars any claim against HUD. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court authorized suits for money damages against federal officials sued in an individual capacity under certain limited circumstances. But any *Bivens* claim against Conorozzo is also time-barred and cannot be saved by any equitable or tolling principles. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). Even assuming it were otherwise viable, plaintiff's claims fail against the federal defendants for each and every one of the reasons set forth in their motions to dismiss, Dkt. Nos. 128-1, 129-1, and in their supplemental response, Dkt. No. 175. Accordingly, plaintiff's *Bivens* claims must be dismissed.

**C. ADA & Section 504** (Count XII)

Plaintiff's corrected proposed second amended complaint asserts claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

The ADA and Section 504 protect the rights of individuals with disabilities in various contexts. *See, e.g.*, *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2d Cir. 2003). But these claims are also time-barred and not subject to any exception, such as the so-called "continuing violation" doctrine. *See, e.g.*, *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 63 (2d Cir. 2021) (Section 504); *Purcell v. N.Y.*

*Inst. of Tech.-Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019) (ADA). Accordingly, plaintiff's ADA and Section 504 claims must be dismissed.

**D. IDEA & FERPA** (Count XIII)

Plaintiff's corrected proposed second amended complaint asserts claims under the Individuals with Disabilities Education Act ("IDEA") and the Family Educational Rights and Privacy Act ("FERPA").

Plaintiff's IDEA claims are time-barred, and no exception to the IDEA's statute of limitations saves them. *See, e.g.*, *Bd. of Educ. of N. Rockland Cent. Sch. Dist. v. C.M. ex rel. P.G.*, 744 F. App'x 7, 10–11 (2d Cir. 2018) (summary order). Even if they were not time-barred, the Court's review of the factual allegations in plaintiff's proposed second amended complaint confirms that her assertions are far, far too vague and conclusory to state any plausible claims for relief. *See, e.g.*, *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 212–13 (2d Cir. 2012). As for FERPA, it does not provide a private right of action. *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 289 (2002). And a request for declaratory (or injunctive) relief cannot avoid that limitation. *Magnoni v. Plainedge Union Free Sch. Dist.*, 2018 WL 4017585, at *7 (E.D.N.Y. Aug. 22, 2018). Accordingly, plaintiff's IDEA and FERPA claims must be dismissed.

**E. 18 U.S.C. § 1962(c)** (Count II)

Plaintiff's corrected proposed second amended complaint asserts claims under the civil component of RICO.

"Congress enacted RICO in 1970 as part of the Organized Crime Control Act to seek the eradication of organized crime in the United States." *Am. Fed'n of State, Cty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013) ("*Bristol-Myers Squibb Co.*") (citation and internal quotation marks omitted).

As relevant here, the civil component of the RICO statute provides a private right of action for treble damages, attorney's fees, and costs to any "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see also Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014) ("When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees.").

Notably, however, RICO is not limited to "mobsters and organized criminals." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985). Instead, the Supreme Court has repeatedly instructed the lower courts that RICO should be read broadly. *Boyle v. United States*, 556 U.S. 938, 944 (2009) (collecting cases). This makes "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).

"Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345 (citation omitted); *see also Mackin*, 59 F. Supp. 3d at 541 ("Courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." (citation omitted)).

To be sure, "[t]he true civil RICO plaintiff may well provide a laudatory societal service, supplementing the government's efforts 'to protect the general public and the common good from felonious conduct.'" *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345 (quoting *Gross v. Waywell*, 628 F. Supp. 2d 475, 481 (S.D.N.Y. 2009)). However, "it is well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for fraud." *Id.*; *see also Sky Med. Supply Inc.*, 17 F. Supp. 3d at 220 (noting that "plaintiffs wielding RICO almost always miss the mark").

Section 1962 sets forth four separate RICO offenses, with each subsection requiring certain elements. Generally speaking, however, a civil RICO

plaintiff has two pleading burdens.[10] *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). First, the plaintiff must allege a violation of the substantive RICO statute by pleading "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)–(c)). Second, the plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." *Id.* (emphasis in original) (quoting 18 U.S.C. § 1964(c)).

Plaintiff's civil RICO claims are also subject to dismissal. First off, they are time-barred. *See, e.g.*, *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998). But even if they were not, plaintiff's proposed second amended complaint fails to plausibly allege the requisite elements of a civil RICO claim, including but not limited to the fact that she has failed to plausibly allege the existence of a RICO enterprise that caused her alleged harm. Accordingly, plaintiff's civil RICO claims must be dismissed.

**F. Leave to Amend**

The final question is whether plaintiff should be given yet another opportunity to try to amend her pleading to cure these defects. "Generally, leave

---

[10] Non-fraud elements of a civil RICO claim are subject to Rule 8(a) while predicate acts sounding in fraud or mistake are subject to the particularity requirement of Rule 9(b). *See, e.g.*, *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (summary order).

to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up). However, leave to amend may be denied if it "appears that granting leave to amend is unlikely to be productive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

After considering the matter, leave to further amend will not be permitted. Because the Court's MFT filing system has given plaintiff nearly free rein to file any and every supporting bit of documentation that she believes might be relevant to this litigation, the Court has had an opportunity to gain an unusually detailed level of insight into the full context of what plaintiff believes her claims to be. This insight confirms that leave to further amend would be unproductive in this case—plaintiff's amended complaint fails, and she was given an opportunity to draft her second amended complaint long after receiving defendants' motions to dismiss, so she was on notice of what the obvious defects would be (such as timeliness). Plaintiff's submissions failed to cure them, so it is unlikely that giving her yet another opportunity to do so would lead to a different result.

## IV. CONCLUSION

For the reasons stated in this opinion and in defendants' motions to dismiss, plaintiff's amended complaint must be dismissed. As the Court further

explained, plaintiff's motion for leave to file her proposed second amended complaint must be denied as futile.

Therefore, it is

ORDERED that

1. Plaintiff's motion for leave to file her proposed second amended complaint (Dkt. No. 160) is DENIED;

2. Plaintiff's motion for leave to file supplemental briefing (Dkt. No. 180) is DENIED as moot;

3. Defendants' motions to dismiss (Dkt. Nos. 49, 120, 123, 125, 128, 129, 153) are GRANTED;

4. Plaintiff's amended complaint (Dkt. No. 17) is DISMISSED without leave to amend.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: October 30, 2026
Utica, New York.